Caroline K. Simon, J.
On June 10, 1966 claimant appeared pro se before this court to argue his claim against the State of New York. It was determined that claimant was then an inmate of Central Islip State Hospital, which institution had permitted *740 him to appear in court to prosecute Ms claim. The matter was removed from the current calendar until either a guardian ad litem had been appointed or Mr. Szostak had been released from the institution.
Claimant, after having been released from Central Islip State Hospital on convalescent status in his own custody and having been advised to attend an aftercare clinic in his borough, addressed a letter to the court informing it of his release in his own custody and requesting that his claim be noticed for trial. This request was granted and the Clerk of the court advised claimant that the claim was restored to the Trial Calendar.
On October 3,1966 claimant again appeared pro se before this court. The State presented evidence that he had been released from Central Islip State Hospital to his own custody on convalescent care June 27, 1966. The court thereupon heard Mr. Szostak’s claim, which had been carefully prepared by him and presented in written form.
He alleged negligence on the part of the Central Islip State Hospital administration in failing to apply for Railroad Retirement Board benefits on Ms behalf for seven years after he believed he had become eligible for them, which failure resulted in a monetary loss to him of $2,427.60. It is for this sum he has sued the State.
Mr. Szostak was born in 1916. He has had 9 hospital admissions since the age of 14 years. Claimant’s hospital record indicates residual disabilities resulting from infantile paralysis contracted in infancy, together with pulmonary tuberculosis pronounced arrested in 1946 by the hospital doctors.
Claimant alleges that an application was filed on October 31, 1962 at Central Islip State Hospital with a representative of the United States Railroad Retirement Board, under a 1954 amendment to the Railroad Retirement Act providing for payments to adult disabled children of deceased retired railroad employees, on behalf of the claimant and over the claimant’s signature. It is further alleged, and the hospital records confirm, that the application was processed and the claim released for payment to Mr. Szostak on March 28, 1963 of the sum of $491.30, constituting 17 months’ payment of $28.90 per month, retroactive to October 1, 1961, and thereafter regular monthly payments of $28.90 have been received by claimant. The hospital record contains correspondence relative to claimant’s requests to the United States Railroad Retirement Board made “ over a period of time ” during 1965, that his railroad retirement benefits be increased.
*741 Section 5 of the Railroad Retirement Act, titled “ Annuities and lump sums for survivors ”, ás amended by Public Law 746, 83rd Congress, 2d session, 1954, which became effective September 1,1954 (U. S. Code, tit. 45, § 228e, subd. [1], par. [1], cl. [ii]), includes among its definitions the following passage: “ (ii) a 1 child ’ shall have been dependent upon its parent employee at the time of his death; shall not be adopted after such death by other than a stepparent, grandparent, aunt, or uncle; shall be unmarried; and shall be less than eighteen years of age, or shall have a permanent physical or mental condition which is such that he is unable to engage in any regular employment: Provided, That such disability began before the child attains age eighteen (Italics added.)
Section 34 of the Mental Hygiene Law contains the following: “ 14. The commissioner may authorize the directors of state institutions in the department to receive or obtain funds or other personal property excepting jewelry due or belonging to a patient who has no committee, up to an amount or value not exceeding two thousand five hundred dollars without taking proceedings for the appointment of a committee ”. (Italics added.)
Section 70 of the same law contains the following: “ 5. Notwithstanding any other provision of law to the contrary no person admitted to a hospital by voluntary or informal admission shall be deprived of any civil right solely by reason of such admission nor shall such admission modify or vary any civil right of any such person, including but not limited to civil service ranking and appointment or rights relating to the granting, forfeiture or denial of a license, permit, privilege or benefit pursuant to any law.” (Italics added.)
The court finds that the Mental Hygiene Law imposes an obligation on State agencies to conserve the rights and assets of those in its custody, and that the reimbursement agent of a State institution is obligated to seek out sources of assets of its patients.
The hospital records presented to this court indicate that Mr. Szostak first informed the hospital administration of the facts surrounding his entitlement to benefits sometime in 1962. When this was pointed out to him later by an interviewing physician, he contended that the Rockland State Hospital records contained this information, and that Central Islip State Hospital was charged with such knowledge. There is no supporting evidence before this court on that assertion.
In the hospital records there is evidence that efforts were made to obtain benefits to which claimant was entitled. The Depart *742 ment of Mental Hygiene inquired in 1962 of the Social Security Administration as to possible social security benefits to which claimant might have rights. The names of claimant’s mother and father were given on the second such request in the hospital record but were stated to be “ unknown ” on the first request, though they were named in a 1952 letter from a State hospital director in relation to planning appropriate aftercare for a period of discharge from hospital treatment. However, even in that communication, though the parents were listed by name and as deceased, there was no statement as to the father’s occupation. Thus, there is nothing in the hospital record to sustain the allegation that in 1954 the State of New York knew of claimant’s father’s occupation.
In the instant case the records indicate that the hospital informed the claimant that the State legally could claim more than the sum claimant felt should have been obtained from the Railroad Retirement Act Fund since the State did charge only $5 a month towards claimant’s care from May 1, 1963. Claimant’s signed statement in the record attests to his being informed of this $5 charge and of his making “ no objection ” to it.
Because claimant tried his own ease without counsel the court did its own research and extreme care was taken to protect claimant’s legal rights. Nevertheless, there being no evidence before the court that the State had notice before 1962 that claimant had rights under the Railroad Retirement Act, this claim must be and hereby is dismissed.
This memorandum constitutes the written decision of the court in accordance with CPLR 4213 (subd. [b]).